## John Maher, Plff. in Err., v. Robert McClellan.

Where a vendee of personal property permits a vendor to use the prop-
erty as his own, as he had done before the sale, a resale by the vendor to
one who buys in good faith, for value and without notice of the first sale,
passes a good title to the second vendee.

In a contest between the two vendees as to the ownership of the prop-
erty, the vendor is a competent witness to show that the first sale was not
bona fide but a cover to protect the property against creditors.

(Argued January 28, 1887.  Decided February 7, 1887.)

June Term, 1886, No. 176, E. D., before MERCUR, Ch. J.,·
GORDON, PAXSON, TRUNKEY, and STERRETT, JJ.   Error to
Common Pleas No. 2 of Philadelphia County to review a judg-
ment on a verdict for defendant in replevin.   Affirmed.

The facts are stated in the following charge to the jury, by
the court below, FELL, J.:

This is an action of replevin for a horse.  Both parties claim
to have purchased this horse of Mr. Davis—Mr. Maher, the
plaintiff, on the 12th of March, and Mr. McClellan, the defend-
ant, on the 21st of April, 1883.

The title of the first purchaser must prevail, unless there is
reason to set it aside.  Was this title good?  According to Mr.
Maher's testimony, on the 12th of March, 1883, Mr. Davis
owed him considerable money, and was insolvent or in failing
circumstances.  With their mutual accounts before them, as to
which there was no dispute, he bought three horses of Davis, for
the amount which was due.

The horse in question, which had before been kept at his
stable at livery, remained there until April 20, when it was
taken out by Davis without his knowledge, and he did not learn
where it was until some weeks after, when he found it in Mr.
McClellan's possession.

If this is true, if there was a sale of this horse by Davis to
Maher in good faith, and the possession of the horse remained
with Maher from March 12 until April 25, and he was then

NOTE.—For the necessity of change of possession of personalty, see note
to Chase v. Garrett, 1 Sad. Rep. 16.

taken out of the stable by Davis (without Maher's knowledge) and sold to McClellan, Mr. Maher's title to the horse was not devested and he is entitled to your verdict.

[If there was a sale of the horse by Davis to Maher, good as between them, and Maher allowed Davis to take the horse out and use it as his own, just as he had done before, and to have the same possession of and control over it after the sale that he had before, and he sold it to an innocent purchaser, the purchaser's title would be good.]

[If the buyer of personal property allows the seller to remain in possession, and he afterwards sells and delivers the property to a purchaser for value, who buys in good faith and without notice of the first sale, such second purchaser is entitled to the goods as against the first.]

· [If a man were to purchase a hat at the store across the street, and allow the possession to remain just as before the sale, with the vendor, who should sell and deliver it to another who bought and paid for it in good faith, without notice of the first sale, the title of the second purchaser would be good.]   Where one of two innocent persons must suffer, he who is the cause of the loss must bear it.

To make the plaintiff's title good it must appear:   first, that he purchased the horse of Davis; second, that after the purchase he took possession of the horse.

The defense is that there was no sale of the horse by Davis to Maher, and that after the 12th of March up to the 21st of April, Davis used the horse daily, just as he had done before, and that McClellan bought it in good faith without notice of any sale, real or pretended, by Davis to Maher.

Mr. Davis has testified that on March 12, 1883, he was embarrassed, and feared judgment would be obtained against him, and that Maher suggested that he should give him a bill of sale for three horses; that at this time Maher was indebted to him; that he paid nothing, and between them there was no intention to make a sale of the horses, and the bill of sale or receipt was intended to be used as a cover to protect his property from his creditors; that there was no delivery of the horses.

That he used the horse in question continuously in his business every day, unless it was raining, until April 21, just as he had done before; that he was charged by Maher for the keep of the horse, up to and including April 21, the day he delivered it to

McClellan; that he sold the horse to McClellan in good faith and for value, and McClellan had no notice of any arrangement between him and Maher.

That he informed Maher of the sale to McClellan the day he made it, and no objection was made to it, and no denial of his right to sell it, and that he said it was "all right," and afterwards handed him a bill for the keep of the horse up to the day it left the stable.

[If this is correct, the plaintiff never had a good title to the horse; and if he had, it was lost through his neglect.]

In corroboration of this it has been shown that the two other horses covered by the bill of sale were afterwards sold by Davis without objection from Maher. One of these horses, soon after the bill of sale was given, was levied on at Maher's stable as the property of Davis.

Davis claimed the benefit of the exemption law, and Maher acted as one of the appraisers who valued and set aside this horse for him.

When McClellan bought the horse, Davis left his buggy at his stable. This buggy was levied on by the sheriff, on October 11, 1883. A number of witnesses have testified that Maher was present at the time fixed for the sale, and announced that he claimed to be the owner of the buggy, but that he made no claim to the horse.

Mr. McClellan has testified that he was acquainted with Davis, and knew the horse and knew that it belonged to him; that on the 20th of April Davis called on him, and wanted to sell the horse and buggy; that he declined to buy the buggy, and the horse was left on trial; that the next day he purchased the horse for $200, paying $135 in cash, and giving Davis a receipted bill for $65.

That he had no knowledge of a sale to Maher, and had never heard of it; that he retained the horse, and used him until the writ in this case was issued, October 26, 1883.

It is for you to decide from this testimony what the truth of the matter is.

Mr. McClellan's title is good if Davis did not sell the horse to Maher, that is, if the transaction between them was not an actual sale, but a mere pretense and cover [or if it was a bona fide sale, and Maher allowed Davis to use the horse daily as he

had done before, as his own horse, and McClellan bought in good faith for value, and without notice of the first sale].

On the trial the defendant made the following offer of testimony, which was allowed under objection:

1. That the accounts between the witness, Davis, and John Maher were not taken into account at the time of the sale of the horse by Davis to Maher.

2. That after the sale of the horse to Maher by Davis, and after the date of the receipt, Davis drove the horse as he had done before. That it was no sale in fact, but a cover.

The assignments of error specified, *inter alia,* the above admission of evidence and the portions of the charge inclosed in brackets.

*Robert Ingram* and *De Forrest Ballou,* for plaintiff in error. —On the sale of personal property, only such delivery is required as the nature of the property is susceptible of. Smith v. Crisman, 91 Pa. 428.

In determining the kind of possession necessary to be given regard must be had not only to the character of the property, but also to the nature of the transaction, the position of the parties. A change of location of the property is not essentially necessary. Crawford v. Davis, 99 Pa. 576.

A bailee of goods who uses and enjoys them as his own cannot devest the title of the bailor by a sale to an innocent person. Com. v. Kraus, 9 W. N. C. 61.

On a sale and delivery of goods there is an implied warranty of title, and therefore the vendor is not a competent witness in a contest between two persons claiming to be vendees. M'Cabe v. Morehead, 1 Watts & S. 513.

Notwithstanding Davis believed that such transfer was for the purpose of hiding the property from the payment of his debts, yet if Maher saw fit to consider it as an absolute transfer, he had a right to do so, and took an absolute title to the property in dispute. Com. v. Thompson, 2 Clark (Pa.) 33.

*J. McGregor Gibb* and *Jas. H. Stevenson,* for defendant in error.—If a vendee of personal property suffers the vendor to remain in possession, and thereby enables him to commit a fraud upon an innocent third person, he who has been the cause of the

loss must bear it. In such case *caveat emptor* does not apply. Davis v. Bigler, 62 Pa. 242, 1 Am. Rep. 393 ; Miller v. Garman, 69 Pa. 134.

The questions whether there was such a delivery as the subject-matter was capable of, and whether it was bona fide, are questions for the jury. Parks v. Smith, 94 Pa. 46, and Pearson v. Carter, 94 Pa. 156.

Even if there was a sale, and possession was given to Maher by Davis, if Maher permitted a concurrent possession to remain in Davis, this is not sufficient. This concurrent possession is evidenced by the use of the horse by Davis after the date of the alleged sale. Miller v. Garman, 69 Pa. 134; Rose v. Story, 1 Pa. St. 190, 44 Am. Dec. 121 ; Crowley v. Irvin, 1 Pennyp. 227.

The testimony for defendant was that there was no sale, but a scheme to defraud the creditors of Davis. As between Davis and the plaintiff this might not have been a defense, and the case of M'Cabe v. Morehead, 1 Watts & S. 513, cited by plaintiff would apply. But as between Maher, a party to the fraud, and McClellan, an innocent third party and purchaser for value, the fraud could be inquired into and, if found to exist, vitiated the sale to Maher.

A party to a fraud is competent to prove it. Langer v. Felton, 1 Rawle, 141.

PER CURIAM :

This case presented two questions of fact; the one, whether there was an actual sale, or merely a pretended one to cover and protect the property from the creditors of the vendor; the other, if a bona fide sale, whether the vendee permitted the vendor to use the horse daily as his own horse, as he had done before, and the plaintiff below bought it in good faith for value and without notice of the first sale.

Both questions were fairly submitted to the jury and the finding thereof sustains the judgment.

Judgment affirmed.